**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JOHN D. COLEMAN, individually and as**<br>**Administrator of the Estate of**<br>**ERVIN COLEMAN, deceased**<br>10217 Broadmeadow Drive<br>Indianapolis, IN 46239<br><br>and<br><br>**LISA D. BERRY and MARLO ROSE**<br>**WELLS, individually and as Co-**<br>**Administrators of the Estate of**<br>**MAXWELL LY, deceased**<br>3702 Marrison Place<br>Indianapolis, IN 46205<br>and<br>5121 Chatham Place<br>Indianapolis, IN 46226<br><br>*Plaintiffs*<br><br>**vs.**<br><br>**RIPLEY ENTERTAINMENT, INC.,**<br>**d/b/a RIDE THE DUCKS**<br>7576 Kingspointe PKWY – Suite 188<br>Orlando, FL 32819<br><br>and<br><br>**RIDE THE DUCKS INTERNATIONAL LLC,**<br>**d/b/a RIDE THE DUCKS**<br>222 E. Dunklin Street, Suite 102<br>Jefferson City, MO 65101<br><br>and<br><br>**RIDE THE DUCKS OF BRANSON, LLC,**<br>**d/b/a RIDE THE DUCKS**<br>2320 W. Highway 76<br>Branson, MO 65616 | **Case No.**<br><br>**JURY TRIAL DEMANDED** |

and

**HERSCHEND FAMILY ENTERTAINMENT
CORPORATION, d/b/a RIDE THE DUCKS**
2800 W. 76 Country Boulevard
Branson, MO 65616

and

**AMPHIBIOUS VEHICLE
MANUFACTURING, LLC**
2320 W. Highway 76
Branson, MO 65616

*Defendants*

## COMPLAINT

**COME NOW** the Plaintiffs, above-named, by and through their attorneys, Aleshire Robb,

P.C., and allege as follows:

### I.   INTRODUCTION

1.     On July 19, 2018, seventeen people had their lives tragically and horrifically

taken from them when the Ride the Ducks Stretch Duck 07 Duck Boat sank to the bottom of

Table Rock Lake in Branson, Missouri.

2.     As Stretch Duck 07 sank, the canopy of the Duck Boat entrapped passengers and

dragged them to the bottom of the lake with the Duck Boat.

3.     On that day, Defendant, Ripley Entertainment, Inc. ("Ripley"), operated

Stretch Duck 07 and recklessly risked the lives of its passengers for purely financial reasons.

4.     Despite being aware of impending severe weather conditions, Ripley intentionally

decided to take the Duck Boat out onto Table Rock Lake instead of cancelling the tour and

refunding the patrons' money.

2

5.     Stretch Duck 07 was designed and manufactured by Defendants, Ride the Ducks, International, LLC, Ride the Ducks of Branson, LLC, Herschend Family Entertainment Corporation and/or Amphibious Vehicle Manufacturing, LLC. These Defendants will be collectively referred to as "RTDI", unless otherwise indicated.

6.     This tragedy was the predictable and predicted result of decades of unacceptable, greed-driven, and willful ignorance of safety by the Duck Boat industry in the face of specific and repeated warnings that their Duck Boats are death traps for passengers and pose grave danger to the public on water and on land.

7.     Prior to this catastrophe, the Duck Boat industry knew that their Duck Boats were entirely unfit to be used for any purpose and had previously been responsible for dozens of deaths.

8.     Prior to killing seventeen people in Branson, injuring fourteen others, and ruining the lives of countless more, Defendants had been told that design flaws in the Duck Boats made them more susceptible to sinking.

9.     On numerous occasions before July 19, 2018, Defendants were warned that the canopies used on their Duck Boats were dangerous and created death traps for passengers in the event of emergency.

10.     For two decades, Defendants had been repeatedly told to change the design of their Duck Boats to make them safer, but they entirely ignored these warnings.

11.     As recently as August 2017, Defendants were again warned that the dangerous design of their Duck Boats put their vessels at risk of sinking.

12.     Upon information and belief, in August 2017, prior to purchasing the Branson operations of RTDI, Ripley hired an inspector, Steven Paul, to inspect the Branson Duck Boats.

3

13.     Defendants were told by Steven Paul that their Duck Boats' engines and the bilge pumps that remove water from their hulls might fail in bad weather due to the improper placement of the boats' exhaust system.

14.     Defendants did nothing in response to these warnings.

15.     Despite the fact that Defendants knew their Duck Boats were unfit to be used even in ideal conditions, on the date of this catastrophe, Defendants' greed caused them to ignore severe weather conditions that demanded they cancel all trips scheduled for their Duck Boats.

16.     Despite countless explicit warnings, Defendants repeatedly chose to value profits over the safety of their passengers, and sent Stretch Duck 07 and thirty-one people out on Table Rock Lake on July 19, 2018, where the vessel took on water and sank to the bottom of the lake, dragging seventeen innocent victims to their avoidable deaths and causing life-altering injuries to the fourteen passengers who survived.

## II.     PARTIES

17.     Plaintiff, John D. Coleman, is an adult citizen of Indiana, residing at 10217 Broadmeadow Drive, Indianapolis, IN 46239.

18.     Plaintiff, John D. Coleman, is the Administrator of the Estate of his brother, Ervin Coleman, deceased.

19.     Plaintiff, Lisa D. Berry, is an adult citizen of Indiana, residing at 3702 Marrison Place, Indianapolis, IN 46205.

20.     Plaintiff, Marlo Rose Wells, is an adult citizen of Indiana, residing at 5121 Chatham Place, Indianapolis, IN 46226.

21.     Plaintiffs, Lisa D. Berry and Marlo Rose Wells, are Co-Administrators of the Estate of their great-nephew, Maxwell Ly, deceased.

4

22.     Additionally, Plaintiffs, Lisa D. Berry and Marlo Rose Wells, are the sisters of decedent, Belinda "Toni" Coleman.

23.     Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Florida with a registered corporate Headquarters at 7576 Kingspointe Pkwy – Suite 188 in Orlando Florida, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

24.     At all relevant times herein, Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

25.     Defendant, Ride the Ducks International LLC, d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Missouri with a registered agent for service of process at Capitol Corporate Services, Inc., 222 E. Dunklin Street, Suite 102, Jefferson City, MO 65101, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

26.     At all relevant times herein, Defendant, Ride the Ducks International LLC, d/b/a Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

27.     Defendant, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Missouri with a registered agent for service of process at 2320 W. Highway 76, Branson, MO 65616, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

5

28.     At all relevant times herein, Defendant, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

29.     Defendant, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located at 2800 W. 76 Country Boulevard, Branson, MO 65616, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

30.     At all relevant times herein, Defendant, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

31.     Defendant, Amphibious Vehicle Manufacturing, LLC, is a corporation organized and existing under the laws of the State of Missouri with a registered agent for service of process at 2320 W. Highway 76, Branson, MO 65616, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

32.     At all relevant times herein, Defendant, Amphibious Vehicle Manufacturing, LLC, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

33.     On December 18, 1996, Ride the Ducks of Branson, Inc. was created by way of the filing of Articles of Incorporation.

34.     In 2001, the RTDI Defendants partnered with Herschend Family Entertainment Corporation in pursuit of national and international expansion.

6

35.     On November 15, 2001, Ride the Ducks International, LLC was created by way of filing Articles of Organization.

36.     On November 16, 2001, an Amendment of Articles of Incorporation of Ride the Ducks of Branson, Inc., was filed, changing the corporation's name to RFMC Investments, Inc.

37.     On November 19, 2001, Ride the Ducks of Branson, LLC was created by way of filing Articles of Organization.

38.     On November 19, 2001, Amphibious Vehicle Manufacturing, LLC was created by way of filing Articles of Organization.

39.     In 2004, Defendant, Herschend Family Entertainment Corporation, became the sole owner of Ride the Ducks.

40.     On October 27, 2005, Ride the Ducks of Branson, LLC filed Notices and Articles of Merger of Limited Liability Companies, merging with Ride the Ducks of Memphis, LLC, Ride the Ducks of San Diego, LLC, Ride the Ducks of Baltimore, LLC, Ride the Ducks of Philadelphia, LLC, Ozarks Scenic Tours, LLC, Amphibious Vehicle Manufacturing, LLC, Duck Development, LLC, and Ride the Ducks International, LLC.

41.     Given the interrelated nature of the RTDI Defendants in this litigation, they are referred to collectively unless otherwise indicated.

42.     In December 2017, Defendant, Ripley Entertainment, Inc., acquired the Branson operations of the RTDI Defendants, as well as its vehicles, which were designed and manufactured by the RTDI Defendants.

43.     RTDI continues to operate as the nation's largest amphibious tour operator with a fleet of nearly 100 vessels which carry over 1 million guests annually.

7

44.     RTDI's continued existence poses a threat to the lives of its guests and the public through its operation of these dangerous Duck Boats.

### III.     JURISDICTION AND VENUE

45.     The Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds the jurisdictional threshold, exclusive of costs, it is between citizens of different states, and because the defendants each have certain minimum contacts with the State of Missouri such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

46.     Venue in the United States District Court for the Western District of Missouri is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in this judicial district, and because Defendants were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

### IV.     FACTS

**The Deadly History of Duck Boats**

47.     Prior to the tragic events of July 19, 2018, Defendants knew that their Duck Boats were inherently unsafe given that from 1999 to 2016, their boats were directly responsible for the deaths of dozens of innocent people.

8



48. On May 1, 1999, The **Miss Majestic Duck Boat** sank on Lake Hamilton Arkansas, drowning 13 Duck Boat passengers.

49. In December 1999, the National Transportation Safety Board ("NTSB") held a public forum on amphibious passenger vehicle safety, which was attended by members of the amphibious passenger vehicle industry and technical experts.

50. Prior to July 19, 2018, Defendants were well aware of the Miss Majestic tragedy, which was a topic of frequent discussion in the industry.

51. On February 18, 2000, the NTSB issued the following safety recommendations to operators of amphibious passenger vehicles in the United States:

> M-00-5 *"Without delay, alter your amphibious vessels to provide reserve buoyancy through passive means, such as watertight compartmentalization, built-in flotation, or equivalent measures, so that they will remain afloat and upright in the event of flooding, even when carrying a full complement of passenger and crew."*

9

52. Defendants had knowledge of the existence of this recommendation and read it before July 19, 2018.

53. RTDI specifically responded to the NTSB's report, writing a letter to Jim Hall, Chairman of the NTSB on June 26, 2000, in an attempt to refute the NTSB's M-00-5 Safety Recommendation.

54. In this letter, Robert F. McDowell, then president of Ride the Ducks Branson, admitted that the significant costs associated with making their Duck Boats safer posed a roadblock to adopting the NTSB's recommendations:



June 26, 2000

Jim Hall, Chairman
National Transportation Safety Board
490 L'Enfant Plaza, S.W.
Washington, D.C. 20594

Re: Response to M-00-5

. . . .

extension, will also need to be considered. We have a potential solution that we are pursuing at this time. It will require considerable feasibility evaluation, and thus expense. We hope to make a determination regarding this concept by the year-end.

. . . .

Once again, thank you for the opportunity to provide input regarding the Safety Recommendation M-00-05.

Sincerely,

Robert F. McDowell
President

10

55. Robert McDowell's challenge of the NTSB chairman and the NTSB safety recommendation was driven solely by an attempt to value profits over the safety of Defendants' passengers as Mr. McDowell had no training or formal academic background in engineering.

56. Robert McDowell designed and developed "stretch duck" boats, including Stretch Duck 07.

57. Upon information and belief, Robert McDowell completed just two years of college and had no background, training or certification in mechanics to support his claims of alternative design.

58. Upon information and belief, Robert McDowell's design was based entirely upon conversations with a high school football coach who previously co-owned the Ride the Ducks business.

59. Upon information and belief, Robert McDowell "self-educated by going to auto parts stores and talking to different people" and did not consult with any engineers when designing the stretch Duck Boats.

60. Jim Hall, chairman of the NTSB, responded ***directly*** to Robert McDowell's attempt to rebuff the NTSB recommendations on August 16, 2000, emphasizing that the recommendations were made "because the Board believed that **immediate action was necessary to avoid additional loss of life**".

Mr. Robert F. McDowell
President
Ride the Ducks
Land & Lake Tour
Post Office Box 1837
Branson, Missouri 65615

Dear Mr. McDowell:

. . . .

  The Board agrees that proper maintenance and operator training are also important to DUKW safety. These issues will be addressed in the Safety Board's final report, which will also address the probable cause of the Arkansas accident. The reserve buoyancy recommendation was issued in advance of the final accident report of the *Miss Majestic* accident because the Board believed that immediate action was necessary to avoid additional loss of life.

. . . .

Thank you for your interest in transportation safety.

       Sincerely,

       ORIGINAL SIGNED BY
         JIM HALL

       Jim Hall
       Chairman

  61.  Despite the NTSB chairman's warning directed to Robert McDowell and to Defendants that immediate action was necessary to avoid additional loss of life, Defendants ignored this warning.

  62.  On April 2, 2002, the NTSB adopted and published a report entitled "Marine Accident Report Sinking of the Amphibious Passenger Vehicle Miss Majestic, Lake Hamilton, near Hot Springs, Arkansas, May 1, 1999."

  63.  According to the NTSB Miss Majestic report, "[o]ne major outcome of the forum was the realization by participants that amphibious vehicles pose unique and unresolved safety

12

risks to the public, but that the vehicles could be made safe by installing safety features that would prevent them from sinking when flooded."

64.     The 2002 NTSB report found "unacceptable level of risks to passenger safety continue to exist in these vehicles…because the industry has failed to take voluntary action to address [the risk posed by lack of adequate reserve buoyancy]."

65.     **The NTSB Miss Majestic report found that the overhead canopy over passengers' heads "essentially caged them, making escape in limited time available extremely difficult".   The report also concluded that "the natural buoyancy of the passengers' bodies forced them into the overhead canopy, which acted like a net to entrap them and to prevent their vertical escape."**

66.     The NTSB report concluded that the "canopies present major safety risks . . . [especially since] . . . [t]his unique vehicle is often promoted to and used by school groups. . . . The Safety Board therefore concludes that, on amphibious passenger vehicles that cannot remain afloat when flooded, canopies represent an unacceptable risk to passenger safety."

67.     On June 23, 2002, just two months after the NTSB's report, the **Lady Duck sank in the Ottawa River**.

68.     Four passengers, including a mother and her two young children, were trapped under the sinking boat's canopy and ultimately drowned.  Even more tragically, these victims were able to put on life jackets but became ensnared in the canopy and were dragged down with the boat.

69.     Subsequent investigation revealed that, in addition to the canopy's failures, a failure of the Lady Duck's bilge pump contributed to this tragedy.

70.     The dangers and unacceptable risks of Duck Boats were further highlighted by the July 7, 2010 tragedy where **DUKW Boat 34 sank in Philadelphia** and resulted in the deaths of two Hungarian tourists, Dora Schwendtner and Szabolcs Prem.

71.     A collision between a Duck Boat and a barge caused the Duck Boat to sink.

72.     Due to the defective canopy design on the Duck Boat, Dora and Szabolcs became trapped and dragged down with the vessel, causing their horrific and painful deaths by drowning.

73.     Representatives from RTDI were repeatedly told during the litigation that ensued of the dangers of their canopy design and the fact that engineering analysis established that the Duck Boat was defective and should not be in use.

74.     In addition to being dangerous on water, Duck Boats are deadly on land.

75.     On May 8, 2015, Elizabeth Karnicki was run over and killed by a Duck Boat owned and operated by RTDI in Philadelphia, PA while her husband was forced to watch.

76.     The operator of DUKW 46 failed to observe Elizabeth Karnicki lawfully crossing in front of his vehicle due to his lack of situational awareness and the massive blind spots on the Duck Boat caused by the bow in front of the operator which prevented him from being able to see the pedestrian in front of him.

77.     Four months later, on September 24, 2015, the front axle of a Duck Boat broke in Seattle, causing a horrific accident with a bus which left five dead and injured sixty-nine.

78.     Prior to the Seattle tragedy, RTDI was aware of a front axle defect in its Duck Boats but failed to issue the appropriate recall, a flagrant violation of applicable law, which would have prevented this horrible accident.

79.     On April 30, 2016, a Duck Boat caused tragedy again when a Boston woman was run over by a boat while riding her scooter.

14

80.     Twenty-eight-year-old Allison Warmuth met her tragic demise as the result of an inattentive Duck Boat driver, who was seen on video, turned in his seat and pointing out landmarks when he ran over Ms. Warmuth with the 2.5 ton vessel.

81.     Upon information and belief, in August 2017, prior to purchasing the Branson operations of RTDI, Ripley hired inspector Steven Paul to inspect the Duck Boats used by the Branson operation, including Stretch Duck 07.

82.     According to Mr. Paul, his inspection was conducted "so [Ripley] had the opportunity to know what they were buying before the sale was final".

83.     Upon information and belief, Steven Paul warned Defendants that the design of their Duck Boats put their vessels at risk of sinking.

84.     Upon information and belief, the chassis for Stretch Duck 07 was originally built in 1944 and used a four-ton-truck-chassis.

85.     Defendants' decision to use the chassis from the 1940s was for the purpose of avoiding modern safety and emissions standards.

86.     Upon information and belief, Defendants were specifically told that the dangerous design of the Duck Boats rendered them susceptible to sinking in the event of rough conditions on the water due to the improper placement of the motor's exhaust in front of the boat and below the water line.

87.     According to reports, Mr. Paul told Defendants that "in rough conditions, water could get into the exhaust system, and then into the motor, cutting it off".

88.     These were the exact conditions faced by Stretch Duck 07 on Table Rock Lake on July 19, 2018.

**The Tragic Events of July 19, 2018**

89.     Defendants' Stretch Duck 07 should have never been on the water on the date of this tragedy.

90.     Jim Pattison, Jr., Ripley's president, admitted as much when asked in an interview if the boat should have been on the water, replying **"no, it shouldn't have been in the water"**.

91.     At 11:24 a.m. on the morning of July 19, 2018, the National Weather Service issued a severe thunderstorm watch for much of southwest Missouri, including Table Rock Lake.



92.     The severe thunderstorm watch was in effect from 11:20 a.m. until 9:00 p.m. on July 19, 2018.

93.     Despite the severe thunderstorm watch, Ripley prioritized profits over safety and continued normal business operations.

94.     At 6:32 p.m., the warning was upgraded to a severe thunderstorm warning, specifically for Taney, Stone, and Barry counties, including Table Rock Lake, warning that the area was to experience winds of up to 60 miles per hour.





95.     In the face of this second, heightened warning, Ripley continued to prioritize profits over safety and carried on with normal business operations, sending Ride the Ducks

Stretch Duck 07 out on Table Rock Lake with thirty-one people on board, including Ervin Coleman and Maxwell Ly.

96.     Previously, Ripley had marketed and sold tickets to these passengers for a tourist trip on the amphibious vehicle which was to first include a tour through the streets of Branson, followed by a cruise on Table Rock Lake.

97.     The subject tour was scheduled to begin at 6:30 p.m.

98.     Upon information and believe at 6:28 p.m., the Captain and Driver of Stretch Duck 07 were told to modify the tour schedule and take the water portion before the land portion in an effort to beat the storm.

99.     As passengers began to board the vessel, the Captain acknowledged that he had monitored the weather radar before the trip.

100.    At approximately 6:50 p.m., the Captain began a safety briefing before the boat entered the water.

101.    During this briefing, passengers were told they would not need their life jackets.

102.    This Captain was specifically trained, consistent with RTDI policy that they should forego water entry anytime severe weather is approaching the area, or if there is a risk of winds exceeding 35 miles per hour, or if waves may be higher than 2.5 feet.

103.    Thus, by entering the water when severe weather was approaching, Ripley violated its own policies and the policies that previously existed under RTDI.

104.    After Stretch Duck 07 entered the water, the well-predicted storm arrived and the Duck Boat encountered waves as high as four feet on Table Rock Lake.

18



105.   At this point, company policy mandated that the Captain instruct passengers to put on their life jackets.

106.   Again the Captain violated protocol and never gave this instruction.

107.   Instead, the captain lowered the plastic side curtains, thus further entrapping passengers in the soon-to-sink vessel.

108.   Due to the defective design of the Duck Boat, Stretch Duck 07 struggled to fight through these waves, with its bow going under water.





19

109. Due to the defective design of the Duck Boat, Stretch Duck 07 was unable to stay above the surface of Table Rock Lake, taking on water and slowly sinking lower in the lake with each additional gallon of water that poured in.



110. Due to the dangerous and defective canopy of Stretch Duck 07, its passengers were trapped inside the Duck Boat as it sank below the surface of Table Rock Lake.

111. As a direct and proximate result of Defendants' carelessness, negligence, gross negligence, recklessness, outrageous conduct, and complete disregard for the welfare of their passengers, seventeen people were dragged to their horrific deaths when Stretch Duck 07 sank to the bottom of Table Rock Lake, with the fourteen survivors suffering life-altering injuries.

112. As the Duck Boat sank to the bottom of Table Rock Lake, the canopy entrapped passengers and dragged them down with the Duck Boat.

113. Included in the deceased are Ervin Coleman and Maxwell Ly, who suffered agonizing deaths, submerged beneath the waters of Table Rock Lake.

114. Prior to their deaths, Ervin Coleman and Maxwell Ly suffered unimaginable fear of impending death.

20

115.     Ervin Coleman and Maxwell Ly struggled and fought to resurface but they eventually were deprived of oxygen and suffered horrific death by drowning.

116.     Prior to July 19, 2018, Defendants knew that Duck Boats are deadly on the land and on the water.

117.     Prior to July 19, 2018, Defendants knew that their Duck Boats' minimal usefulness as a product is outweighed by the grave danger they pose to the community.

118.     Despite Defendants' knowledge, they chose to value profits over the safety of their passengers and sent thirty-one innocent people in Stretch Duck 07 out on Table Rock Lake on July 19, 2018, willfully and intentionally placing them directly in harm's way.

119.     The injuries and death sustained as a result of this tragedy were caused as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness and/or other liability-producing conduct of Defendants.

120.     As a result, Plaintiffs claim damages for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiffs including, among other things, wrongful death benefits, damages for the horrific and agonizing pain and suffering endured by Ervin Coleman and Maxwell Ly until the moment of their deaths, and damages for the loss of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support of Ervin Coleman and Maxwell Ly.

121.     Plaintiffs also claim aggravating circumstances damages against Defendants to punish Defendants and to deter others from like conduct.

122.     Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious

21

Vehicle Manufacturing, LLC, are jointly and severally liable for the catastrophic injuries sustained by Plaintiffs as a result of this senseless tragedy.

## COUNT I – NEGLIGENCE

## PLAINTIFFS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS

123.     Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

124.     Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, owed Plaintiffs a duty to act reasonably before conducting Duck Boat tours and to obey all waterway and boating rules and standards while operating Duck Boats on Table Rock Lake.

125.     Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, breached that duty and proximately caused the injuries to Plaintiffs.

126.     Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, by and through its respective agents, servants, workmen and employees, was negligent, careless, grossly negligent and reckless both generally and in the following particular respects, all of which was within the privity and/or knowledge of Defendant:

> a.     Failing to implement policies, procedures and crew training to ensure passenger safety when Duck Boats were operating on Table Rock Lake;
>
> b.     Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, abandoning ship;
>
> c.     Failing to train its personnel how to properly operate Duck Boats in the event of adverse weather;
>
> d.     Operating the Duck Boat in a careless and negligent manner;
>
> e.     Failing to exercise reasonable care under all of the circumstances;
>
> f.     Operating a vessel whose engine and/or exhaust system were in a known poor state of repair;

22

g.      Failing to have properly operating safety equipment on board;

h.      Failing to distribute life jackets in a timely manner;

i.      Failing to ensure that all passengers put on their life jackets and that the jackets were properly secured;

j.      Failing to ensure that the captain and the crew were properly trained to operate the Duck Boat;

k.      Failing to properly train the crew in the proper and safe operation of the Duck Boat;

l.      Failing to maintain the Duck Boat in a reasonable manner;

m.      Failing to recognize a risk to passenger safety in operating the Duck Boat during a severe thunderstorm warning;

n.      Failing to implement and/or follow standard operating procedures;

o.      Failing to properly qualify the crew;

p.      Failing to provide the fleet and/or crew with effective safety policies and procedures;

q.      Failing to properly oversee the fleet and/or crew;

r.      Failing to correct conditions of unseaworthiness within their privity or knowledge;

s.      Failing to have a competent crew piloting the vessel;

t.      Failing to have a policy prohibiting operation of Duck Boats during a severe thunderstorm warning;

u.      Failing to train their personnel not to operate Duck Boats during a severe thunderstorm warning;

v.      Failing to have a seaworthy vessel that would remain afloat while flooded;

w.      Failing to incorporate the safety recommendations of the NTSB;

x.      Failing to properly monitor the weather;

y.      Failing to have proper severe weather policies.

23

127. By reason of the carelessness, negligence, gross negligence and recklessness of Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Plaintiffs were caused to sustain the serious, permanent, disabling, and fatal personal injuries as set forth more fully above.

128. By conducting itself as described above, Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, evidenced a reckless and/or conscious disregard for the rights and safety of others, including Plaintiffs.

129. By conducting itself as described above, the acts and/or omissions of the Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, were a substantial factor, a factual cause and/or increased the risk of harm of Plaintiffs' catastrophic and fatal injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

## COUNT II - STRICT PRODUCT LIABILITY

### PLAINTIFFS v. RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC

130. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

131. The RTDI Defendants, by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under Missouri Revised Statute § 537.760.1 because:

    a. Defendants are engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying Duck Boats;

24

b.     The Duck Boat involved in Plaintiffs' accident was placed in the general stream of commerce by Defendants;

c.     The Duck Boat involved in Plaintiffs' accident was put to use in a manner reasonably anticipated by Defendants; and

d.     The Duck Boat involved in Plaintiffs' accident was designed, manufactured, assembled, distributed and/or sold in a defective condition for the reasons set forth below.

132.   The RTDI Defendants, by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under Missouri Revised Statute § 537.760.1 by:

a.     Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

b.     Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous for its intended use;

c.     Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

d.     Failing to have adequate warnings/instructions on and/or with the Duck Boat;

e.     Failing to provide adequate warnings/instructions to the ultimate users of the product;

f.     Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features;

g.     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

h.     Designing, manufacturing, assembling, selling, and/or supplying Duck Boats without incorporating therein the state of the art of the industry and the state of the art in the science and engineering;

i.     Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that lacked acceptable buoyancy;

j.     Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats without following safety recommendations of the NTSB;

25

k.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats in such a manner that passengers become entrapped within the canopy of the boat in the event of swamping or capsizing;

l.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats with the exhaust system improperly placed leaving the boats exposed to risk of sinking in rough water conditions;

m.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that were insufficient and/or unsafe for their intended use.

133.  By conducting themselves as stated, the actions and/or in-actions of the RTDI Defendants were substantial factors, a factual cause and/or increased the risk of harm to the Plaintiffs.

134.  The Duck Boats were not equipped at the time they left the possession and control of the RTDI Defendants with every element necessary to make them safe for their intended use, reasonably foreseeable uses, and reasonably foreseeable misuses.

135.  By reason of the breach of duties pursuant to Missouri Revised Statute § 537.760.1 of the RTDI Defendants by and through their agents, servants, workmen, contractors, suppliers, distributors and/or employees, Plaintiffs were caused to sustain the serious, permanent, disabling, and fatal personal injuries as set forth more fully above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

26

# COUNT III -NEGLIGENCE

## PLAINTIFFS v. RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC

136.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

137.    At all relevant times herein and material hereto, the RTDI Defendants manufactured, designed, distributed, sold, installed, supplied, and/or assembled Stretch Duck 07.

138.    The RTDI Defendants, by and through their agents, servants, workers and employees were jointly and severally careless, negligent, grossly negligent and/or reckless as follows, all of which was within the privity and knowledge of Defendants:

    a.    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

    b.    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous for its intended use;

    c.    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

    d.    Failing to have adequate warnings/instructions on and/or with the Duck Boat;

    e.    Failing to provide adequate warnings/instructions to the ultimate users of the product;

    f.    Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features;

    g.    Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

    h.    Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

27

> i.    Designing, manufacturing, assembling, selling, and/or supplying Duck Boats without incorporating therein the state of the art of the industry and the state of the art in the science and engineering;
>
> j.    Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that lacked acceptable buoyancy;
>
> k.    Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats without following safety recommendations of the National Transportation Safety Board;
>
> l.    Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats in such a manner that passengers become entrapped within the canopy of the boat in the event of swamping or capsizing;
>
> m.    Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats with the exhaust system improperly placed leaving the boats exposed to risk of sinking in rough water conditions;
>
> n.    Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that were insufficient and/or unsafe for their intended use.

139.    Additionally, the RTDI Defendants operated the Branson Duck Boat operations for decades.

140.    In that capacity, the RTDI Defendants set policies and procedures for how Duck Boat operations would be conducted in Branson, which were later adopted by Ripley.

141.    The RTDI Defendants hired and trained numerous personnel that were involved in the acts and omissions that led to this tragedy.

142.    The RTDI Defendants, by and through their respective agents, servants, workmen and employees, were negligent, careless, grossly negligent and reckless both generally and in the following particular respects, all of which was within the privity and/or knowledge of Defendants:

> a.    Failing to implement policies, procedures and crew training to ensure passenger safety when Duck Boats were operating in Table Rock Lake;
>
> b.    Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, abandoning ship;

28

c.    Failing to train their personnel how to properly operate Duck Boats in the event of adverse weather;

d.    Operating the Duck Boat in a careless and negligent manner;

e.    Failing to exercise reasonable care under all of the circumstances;

f.    Operating a vessel whose engine and/or exhaust system were in a known poor state of repair;

g.    Failing to have properly operating safety equipment on board;

h.    Failing to distribute life jackets in a timely manner;

i.    Failing to ensure that all passengers put on their life jackets and that the jackets were properly secured;

j.    Failing to ensure that the captain and the crew were properly trained to operate the Duck Boat;

k.    Failing to properly train the crew in the proper and safe operation of the Duck Boat;

l.    Failing to maintain the Duck Boat in a reasonable manner;

m.    Failing to recognize a risk to passenger safety in operating the Duck Boat during a severe thunderstorm warning;

n.    Failing to implement and/or follow standard operating procedures;

o.    Failing to properly qualify the crew;

p.    Failing to provide the fleet and/or crew with effective safety policies and procedures;

q.    Failing to properly oversee the fleet and/or crew;

r.    Failing to correct conditions of unseaworthiness within their privity or knowledge;

s.    Failing to have a competent crew piloting the vessel;

t.    Failing to have a policy prohibiting operation of Duck Boats during a severe thunderstorm warning;

u.    Failing to train their personnel not to operate Duck Boats during a severe thunderstorm warning;

v.    Failing to have a seaworthy vessel that would remain afloat while flooded;

29

w.      Failing to incorporate the safety recommendations of the NTSB;

x.      Failing to properly monitor the weather;

y.      Failing to have proper severe weather policies.

143.      By reason of the carelessness, negligence, gross negligence and recklessness of the RTDI Defendants, as aforesaid, Plaintiffs were caused to sustain the serious, permanent, disabling, and fatal personal injuries as set forth more fully above.

144.      By conducting themselves as set forth above, the acts and/or omissions of the RTDI Defendants, were a substantial factor, a factual cause and/or increased the risk of harm of Plaintiffs' catastrophic and fatal injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

**COUNT IV – OUTRAGEOUS CONDUCT (PUNITIVE DAMAGES)**

**PLAINTIFFS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

145.      Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

146.      At all times relevant hereto, Defendants' conduct was beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community.

147. Defendants blatantly ignored the safety and design recommendations of the National Transportation Safety Board following the 1999 Miss Majestic disaster and the 2010 fatal accident in Philadelphia.

148. Defendants blatantly ignored the written warnings of the private inspector who told them, in August 2017, that the design of their Duck Boats put their vessels at risk of sinking and made them impossible to escape from in the event of an emergency.

149. Defendant egregiously ignored the fact that their Duck Boats were responsible for dozens of deaths prior to the Table Rock Lake disaster.



150. Defendants knew that the defective and dangerous condition of Stretch Duck 07 posed a very high risk of serious bodily injury and/or death to passengers.

151. Defendants knowingly, willfully, and intentionally failed to take proper and recommended action to make their Duck Boats safe for passengers.

152. Defendants failed to incorporate the NTSB safety recommendations and safety designs to save money.

153. Defendants put profits over people and exposed their passengers to unsafe conditions and hazards to improve their bottom line.

154. Defendants' conduct rises to the level of outrageous conduct by willfully and recklessly ignoring the known dangerous condition of Stretch Duck 07 which caused Plaintiffs' fatal and catastrophic injuries.

155. Defendants acted in a willful, wanton and reckless disregard for the safety of their passengers.

156. This and other misconduct constituted outrageous, willful and/or wanton misconduct, and manifested a reckless indifference to the rights of others to support an award of punitive damages and/or damages for aggravating circumstances.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT V – WRONGFUL DEATH

**JOHN D. COLEMAN, individually and as Administrator of the Estate of ERVIN COLEMAN v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

32

157. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

158. Plaintiff, John D. Coleman, is the Administrator of the Estate of Ervin Coleman, deceased, and is the proper party to bring this action pursuant to the provisions of Missouri Revised Statute § 537.080, *et seq.*

159. Plaintiff, John D. Coleman, claims on behalf of the Estate of Ervin Coleman all damages suffered by the estate by reason of the death of Ervin Coleman, including without limiting the generality of the following: the severe injuries to Ervin Coleman, which resulted in his excruciating drowning death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Ervin Coleman suffered prior to his death; the loss of future earning capacity suffered by Ervin Coleman from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained; the loss and the total limitation and deprivation of his normal activities, pursuits and pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained by reason of the negligence, gross negligence, carelessness, recklessness and/or other liability-producing conduct of Defendants.

160. By reason of the death of Ervin Coleman, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, and comfort, loss of counseling and loss of guidance.

161. As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness and/or other liability producing conduct of Defendants, Ervin Coleman's wrongful death beneficiaries incurred, or have been caused to incur and pay, large and various funeral,

33

burial, estate and administration expenses for which Plaintiff is entitled to compensation in this proceeding.

162.    Plaintiff, John D. Coleman, as Administrator of the Estate of Ervin Coleman, deceased, brings this action by virtue of Missouri Revised Statute § 537.080, *et seq.*, and claims all benefits and recoverable damages under § 537.080, *et seq.*, on behalf of all other persons entitled to recover under law.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

**COUNT VI - WRONGFUL DEATH**

**<u>LISA D. BERRY and MARLO ROSE WELLS, individually and as Co-Administrators of the Estate of MAXWELL LY, deceased v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC</u>**

163.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

164.    Plaintiffs, Lisa D. Berry and Marlo Rose Wells, are the Co-Administrators of the Estate of Maxwell Ly, deceased, and are the proper parties to bring this action pursuant to the provisions of Missouri Revised Statute § 537.080, *et seq.*

165.     Plaintiffs, Lisa D. Berry and Marlo Rose Wells, claim on behalf of the Estate of Maxwell Ly all damages suffered by the estate by reason of the death of Maxwell Ly, including without limiting the generality of the following:   the severe injuries to Maxwell Ly, which resulted in his excruciating drowning death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Maxwell Ly suffered prior to his death; the loss of future earning capacity suffered by Maxwell Ly from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained; the loss and the total limitation and deprivation of his normal activities, pursuits and pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained by reason of the negligence, gross negligence, carelessness, recklessness and/or other liability-producing conduct of Defendants.

166.     By reason of the death of Maxwell Ly, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, and comfort, loss of counseling and loss of guidance.

167.     As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness and/or other liability-producing conduct of Ride the Ducks Defendants, Maxwell Ly's wrongful death beneficiaries incurred, or have been caused to incur and pay, large and various funeral, burial, estate and administration expenses for which Plaintiffs are entitled to compensation in this proceeding.

168.     Plaintiffs, Lisa D. Berry and Marlo Rose Wells, as Co-Administrators of the Estate of Maxwell Ly, deceased, bring this action by virtue of Missouri Revised Statute

§ 537.080, *et seq.*, and claim all benefits and recoverable damages under § 537.080 and § 537.090, *et seq.*, on behalf of all other persons entitled to recover under law.

        **WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### JOHN D. COLEMAN, individually and as Administrator of the Estate of ERVIN COLEMAN v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC

        169.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

        170.    Ervin Coleman was a passenger on Stretch Duck 07 at the time of this tragedy.

        171.    In the moments leading up to his horrific death when Stretch Duck 07 sank to the bottom of Table Rock Lake, Ervin Coleman was in the zone of danger and was placed in danger of, and actually suffered, physical injuries which were eventually fatal.

        172.    In addition, Ervin Coleman witnessed as the thirty passengers of Stretch Duck 07 suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

173. Most horrifically, Ervin Coleman witnessed the fatal injuries sustained by his brother, Horace, his sister-in-law, Belinda, his nephew, Glenn, his niece, Angela, his great-nephews, Reese, Evan, and Maxwell, and his great-niece, Arya.

174. He was a bystander witnessing as his niece, Tia, and great-nephew, Donovan, struggled and eventually escaped the sinking Duck Boat.

175. In unsuccessfully fighting for his life in Table Rock Lake and as a result of witnessing the injuries caused to other passengers of Stretch Duck 07, Ervin Coleman, in addition to his physical injuries, suffered further injuries including, but not limited to: emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**LISA D. BERRY and MARLO ROSE WELLS, individually and as Co-Administrators of the Estate of MAXWELL LY, deceased v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

176. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

37

177. Maxwell Ly was a passenger on Stretch Duck 07 at the time of this tragedy.

178. In the moments leading up to his horrific death when Stretch Duck 07 sank to the bottom of Table Rock Lake, Maxwell Ly was in the zone of danger and was placed in danger of, and actually suffered, physical injuries which were eventually fatal.

179. In addition, Maxwell Ly witnessed as the thirty passengers of Stretch Duck 07 suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

180. Most horrifically, Maxwell Ly witnessed the fatal injuries sustained by his mother, Angela, his uncle, Glenn, his grandfather, Horace, his grandmother, Belinda, his great-uncle, Ervin, and his cousins, Reese, Evan, and Arya.

181. He was a bystander witnessing as his brother, Donovan, and his aunt, Tia, struggled but eventually escaped the sinking Duck Boat.

182. In unsuccessfully fighting for his life in Table Rock Lake and as a result of witnessing the injuries caused to other passengers of Stretch Duck 07, Maxwell Ty, in addition to his physical injuries, suffered further injuries including, but not limited to: emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

38

## COUNT IX - VIOLATIONS OF THE
## MISSOURI MERCHANDISING PRACTICES ACT

### PLAINTIFFS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC

183.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

184.    Missouri Revised Statute § 407.010, *et seq.*, the Missouri Merchandising Practices Act (or "MMPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce".  Mo. Rev. Stat. § 407.020 (1).

185.    Defendants sold tickets for the ill-fated Stretch Duck 07 tour of July 19, 2018, to Plaintiffs' decedents.

186.    The Stretch Duck 07 tour was a "service" as defined under Missouri Revised Statute § 407.010, *et seq.*

187.    The tickets purchased by or on behalf of Plaintiffs' decedents for the Stretch Duck 07 tour of July 19, 2018, were purchased for their personal purpose.

188.    Defendants represented to consumers, including Plaintiffs' decedents, that their Duck Boats were equipped with the "latest in marine safety" and "modern safety equipment".

189.    Defendants also stated to consumers, including Plaintiffs' decedents, that their Duck Boats were "state of the art", and utilized "patented safety features that no other duck-style vehicle has".

190.    Defendants promised consumers, including Plaintiffs' decedents, that "safety is our priority".

191.    By reason of Defendants' conduct as set forth above, Defendants have engaged in unfair or deceptive acts or practices in violation of the MMPA.

192.    Defendants' practices as described herein violate the MMPA because the practices were and are intended to deceive consumers in connection with the sale of their services and occurred in the course of conduct involving trade and commerce in Taney County, located within the United States District Court for the Western District of Missouri.

193.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen and employees, violated the MMPA by making and disseminating untrue, false, and misleading statements to consumers, including Plaintiffs' decedents, to promote the sale of their services, or by causing untrue, false, and misleading statements their Duck Boats to be made or disseminated to consumers, including Plaintiffs' decedents, in order to promote the sale and use of their services.  These untrue, false, and misleading statements included, but were not limited to:

a.    Misrepresenting the truth about the unsafe nature of their Duck Boats;

b.    Misrepresenting that their Duck Boats are safe;

c.    Misrepresenting that their Duck Boats have the latest safety features;

d.    Misrepresenting that safety is the priority of Defendants;

e.    Misleading consumers to believe that their Duck Boats are safe;

f.    Falsely claiming that their Duck Boats are safe;

g.    Falsely claiming that their Duck Boats utilize state of the art safety equipment;

h.    Falsely omitting or minimizing the known dangers associated with their Duck Boats.

40

194.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen and employees, also violated the MMPA by making statements that omitted or concealed material facts to promote the sale of their services.

195.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen and employees, repeatedly failed to disclose or minimized material facts about the known risks and dangers associated with their Duck Boats.

196.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen, employees, and/or third parties, made and disseminated the foregoing untrue, false and misleading statements, and material omissions, through an array of marketing channels, including, but not limited to, online, print, television, and social media advertising.

197.    Defendants knew at the time of making or disseminating these misstatements and material omissions, or causing these misstatements and material omissions statements to be made or disseminated, that they were untrue, false, or misleading and therefore likely to deceive consumers.

198.    In addition, Defendants knew or should have known that their marketing and promotional efforts created an untrue, false, and misleading impression of the safety of their Duck Boats.

199.    In sum, Defendants: (a) directly engaged in untrue, false, and misleading marketing in trade or commerce; (b) disseminated the untrue, false, and misleading marketing through third parties; and (c) aided and abetted the untrue, false, and misleading marketing through third parties.

200.    All of this conduct, separately and collectively, was intended to deceive consumers, including Plaintiffs' decedents.

41

201.    As a direct result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits, which they would not have received if they had not engaged in the violations of the MMPA as described above.

202.    By reason of the foregoing, Plaintiffs suffered ascertainable losses, including economic losses, as described in Missouri Revised Statute § 407.025, *et seq.*, and claim punitive damages and attorney's fees pursuant to Missouri Revised Statute § 407.025 (1).

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

Respectfully submitted,

**ALESHIRE ROBB, P.C.**

*/s/ Gregory W. Aleshire*
Gregory W. Aleshire, Mo Bar #38691
William R. Robb, Mo Bar #43322
Kevin J. Rapp, Mo Bar #57974
2847 S. Ingram Mill Road A-102
Springfield, MO 65804
Phone:  (417) 869-3737
Fax:  (417) 869-5678

AND

42

(Pending Admission *Pro Hac Vice*)
**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
Robert J. Mongeluzzi, PA Bar #36283
Andrew R. Duffy, PA Bar #77121
Jeffrey P. Goodman, PA Bar #309433
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Phone: (215) 496-8282
Fax: (215) 496-0999